STATE of Missouri, Respondent,

v.

Paul Wayne JENNINGS, Appellant.

No. WD 32944.

Missouri Court of Appeals,
Western District.

Jan. 25, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 29, 1983.

**450**

Charles W. Gardner (argued), Lee's Summit, for appellant.

Kelly Klopenstein, Asst. Atty. Gen. (argued), Kansas City, John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Paul Wayne Jennings (defendant) appeals from a jury verdict finding him guilty of burglary in the second degree in violation of § 569.170 [1], and stealing in violation of § 570.030. Defendant, sentenced to six years for each count running concurrently,

---

1. All sectional references are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

raises nineteen points on appeal primarily challenging the sufficiency of the evidence. We affirm.

On January 23, 1979, Mr. and Mrs. Kenneth Bell left their home in Mayview in Lafayette County for Kansas City. At 5:00 a.m. on January 26 they were informed that their house had burned down and returned immediately to find it totally destroyed and still smouldering. Two items—a chimney of a hurricane lamp and a small metal box—normally kept inside the house were found outside and unharmed, suggesting to Mr. Bell that "robbery" was involved. He contacted the police.

That same morning, police found a car in a ditch in Johnson County full of various items, including a color television, speakers, stereo, statuary, a mantle clock, and a Wollensak tape recorder. The car belonged to Ms. Pearl Haynes, defendant's girlfriend. Defendant admitted that he had driven the car into the ditch early on the morning of January 26. Mr. Bell identified the items as things "taken from our home." Defendant was charged with both stealing and burglary. Following a motion to suppress, the only item defendant was charged with stealing was the Wollensak tape recorder.

At trial, Ms. Haynes testified that she and the defendant had returned to their home in Mayview at 11:30 p.m. on January 25. The defendant left the house, saying he was going to feed the hogs, but instead drove off in Ms. Haynes' car. The car was empty at that time. She did not see him again for several days.

Mr. Bell testified that he purchased his Wollensak tape recorder for $175 in 1974 and that similar ones now cost $400. He described numerous occasions on which the defendant had been in his house, asking for odd jobs or money. Mr. Bell had given him both.

Defendant's only witness, Mr. Jim Sample, buyer and seller of used appliances, attempted to value the used Wollensak by saying that he had bought others for $75 or $80. He did not give the price at which he sold them. When he was asked by defense counsel "do you feel there is any way that this tape recorder would be worth as much as $150?" the state objected to the question as argumentative and the court sustained the objection. Defense counsel asked no more questions. Mr. Sample testified on cross-examination that new Wollensaks sell from $160 to $320.

To best consider defendant's nineteen overlapping points, we have grouped them into four areas: (1) challenges to the sufficiency of the evidence; (2) challenges relating to the jury and instructions; (3) challenges to the admission of evidence; and (4) challenges relating to certain alleged defects in the information and court procedures.

### 1. Sufficiency of the evidence

Eleven of defendant's nineteen points challenge the sufficiency of the evidence, alleging that the state failed to prove the corpus delicti for either count, that the elements of both counts were not proven, that the evidence was entirely circumstantial, that the verdict was contrary to law and based on passion and prejudice, and that the verdict was unsupported by the evidence.

In considering the sufficiency of the evidence in a criminal case, we are required to construe the evidence most strongly in favor of the prosecution, considering all favorable inferences that can be legitimately drawn. Inferences and evidence to the contrary are to be disregarded. *City of Kansas City v. Oxley,* 579 S.W.2d 113, 115 (Mo.1979) (en banc). While we will not weigh the evidence if the verdict was supported by substantial evidence, we must scrutinize the record to assure that the evidence was indeed substantial. *State v. Gregory,* 339 Mo. 133, 96 S.W.2d 47 (1936).

Defendant's first point in this area is that the state failed to prove the corpus delicti. The state's burden is to prove that a crime was committed, *State v. Black,* 611 S.W.2d 236 (Mo.App.1980), a burden that may be met by using circumstantial evidence. *Holtkamp v. State,* 588 S.W.2d 183, 188 (Mo.App.1979).

■ Certainly the evidence here is circumstantial but based on the legitimate inferences that can be drawn from it, we have no difficulty finding that the state has shown that a crime was committed. Property once inside a home was found outside that home in the possession of someone other than the owner, without the permission of the owner. No great leap of imagination is required to infer that someone removed the property in a criminal act. The state need not show that the defendant was connected to the crime to establish the corpus delicti. *State v. Wood,* 596 S.W.2d 394, 402 (Mo.) (en banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). Here, then, corpus delicti was adequately established. Moreover, this point was not raised in defendant's motion for a new trial and hence, is not properly preserved for appellate review.[2]

■ Defendant next argues that the state failed to prove all the elements of either count. Section 569.170 provides in pertinent part that a person commits burglary in the second degree when he knowingly enters unlawfully a building or inhabitable structure for the purpose of committing a crime therein. Defendant claims that none of the elements was proven. Without question, no direct evidence was presented to show that defendant actually unlawfully entered the Bells' home with the intent of removing the items. Nevertheless, "an inference of guilt is permissible from the unexplained exclusive possession of property recently stolen in a burglary and this possession and inference are sufficient proof to submit both a burglary and stealing charge to the jury." *State v. Battles,* 607 S.W.2d 723, 726 (Mo.App.1980). Unlike *State v. Watson,* 350 S.W.2d 763 (Mo.1961), in which the court held that the "mere presence" of a passenger in a car

containing stolen property was insufficient to establish exclusive possession, the defendant here was the only party known to have driven the car that night.[3] Because he acknowledged driving into the ditch at about 1:00 a.m. on January 26, the only hypothesis consistent both with this admission and with possession by others is that someone else saw the car, filled it with the items and left it for the car owner to find. The mere existence of some *possible* hypothesis does not justify removing the case from the jury, *State v. Franco,* 544 S.W.2d 533, 534–35 (Mo.1976) (en banc), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977), unless the hypothesis of innocence is *reasonable*. *State v. Odum,* 351 S.W.2d 10, 14 (Mo.1961). The hypothesis consistent with defendant's innocence here is not reasonable. Accordingly, the inference from the evidence that Mr. Jennings entered the Bells' house unlawfully with the intent to commit a crime is permissible.

■ Similarly, Mr. Jennings' complaint that the state has not shown that a building was entered is without merit. Although by 5:00 a.m. on January 26, the building was gone, a house clearly existed on January 23 when the Bells left, leaving the items inside. The unburned condition of the items permits an inference that at the time they were removed, the house was not destroyed by fire, leading to the reasonable conclusion that they were taken from a building, as required by statute. We find that the elements of § 569.170 were adequately established to justify submission to the jury.

■ In his challenge to the elements of stealing, Mr. Jennings contends that the state failed to prove that the stealing occurred in Lafayette County as alleged in the information. Although proof of the venue of the acts is necessary to prosecute

---

2. The same is true of defendant's challenge to the verdict as based on circumstantial evidence and resulting from passion and prejudice, challenge to the sufficiency of the information and court procedure, and challenge to the failure to give MAI–CR 33.00.

3. In addition, the Missouri Supreme Court has stated that "Watson may unduly constrict the

rule as to what constitutes possession of stolen property sufficient to permit a factual inference of guilt." *State v. Cobb,* 444 S.W.2d 408, 414 (Mo.1969) (en banc). Thus, as the court said in *State v. Schleicher,* 458 S.W.2d 351, 354 (Mo. 1970) (en banc), the "value of that case as authority has been greatly weakened."

on the information, *State v. Hawkins,* 361 S.W.2d 775, 778 (Mo.1962), proof may be made by circumstantial evidence, *State v. Vincent,* 582 S.W.2d 723, 724 (Mo.App.1979). Because the evidence shows that the tape recorder was located in Mayview, Lafayette County, immediately prior to its removal from Mr. Bell's possession, the inference that it was taken in Lafayette County is more than reasonable.

In light of our conclusions above, we must find no merit as well in defendant's additional contentions that failure to prove the burglary charge necessitates acquittal on the stealing charge, that the inferences do not adequately establish a chain of circumstantial evidence, that the verdict was contrary to law and the result of passion and prejudice, and that the verdict was unsupported by the evidence.

### 2. *The jury and the instructions*

█ Defendant argues that he was deprived of his Seventh Amendment right to a jury representing an accurate cross-section of Saline County because only four of the thirty-five members of the jury panel were not residents of Marshall, Missouri. He claims that jurors from an environment more rural than Marshall would have better understood the "likelihood of such a crime in a small community" and would have been less biased by a fire.

A prima facie violation of the fair-cross-section requirement[4] requires "the defendant [to] show (1) that the group . . . excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires . . . is not fair and reasonable . . . ; and (3) that this underrepresentation is due to systematic exclusion . . . in the jury-selection process." *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

█ Even assuming arguendo that non-residents of Marshall are in any way distinctive, we find no indication either that the representation of the group is unfair or unreasonable (defendant's claim of the group's better understanding of crime in a small community and non-bias by a fire being decidedly unconvincing) or that the underrepresentation is due to a systematic exclusion. Accordingly, defendant has not been deprived of his right to a jury composed of a fair-cross-section of the community.

█ In addition, we find no prejudicial error in the court's failure to give MAI–CR 3.20, Alibi, MAI–CR 3.60, Other Offenses by Defendant to Show Intent, etc. . . ., or MAI–CR2d 33.00, defining "inhabitable structure."

MAI–CR 3.20 must be given if requested (Notes on Use 1). Defense counsel did not so request the instruction here and hence, it was not required. Moreover, the issue of whether defendant was present at the time the offense occurred (the issue addressed in MAI–CR 3.20) was adequately presented to the jury in Instruction No. 5 (MAI–CR 23.-52).

█ MAI–CR 3.60 instructs the jury that evidence of other offenses the defendant was involved in or convicted of may be considered only on certain issues. Without doubt, such an instruction would have been inappropriate here where defendant's involvement in or conviction of another offense was never in evidence. Defendant contends that his involvement in arson was implied by evidence of the burning of Mr. Bell's home, but the record shows no suggestion by the state that he had anything to do with the burning.

█ MAI–CR 33.00 defines the term "inhabitable structure", a definition which is mandatory when the term is used in any instruction (Notes on Use 1) and should have been given by the trial judge. The error was not preserved for review, however, in defendant's motion for new trial and therefore, we may review this point only as plain error under Rule 29.12(b). When instructions are at issue, the defendant must show that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice. *State v. Dighera,* 617 S.W.2d 524, 534 (Mo.App.1981). Here,

---

4. *See Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), and *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

where the term was used in its most common and obvious meaning as a dwelling, we find that the failure to define the term did not rise to the level of manifest injustice.

### 3. *Admission of evidence*

Defendant next argues that the trial court erred in sustaining the state's objection to his questioning of defense witness, Mr. Sample. On direct, Mr. Sample testified that he "couldn't say exactly" the value of the tape recorder but that he had bought others for $75 or $80, and that he had attended a recent auction where two were sold for $30 and $35. Counsel then asked, "Jim, do you feel there is any way that this tape recorder would be worth as much as $150?" The prosecutor then objected, "This is argumentative. He's already stated his opinion of the price." The objection was sustained.

Whether or not we agree that the question was indeed argumentative, defense counsel concedes in his brief that the question was less than perfect in that it "could have been better phrased to be less leading." In light of this concession, we cannot say that the trial court abused its discretion in sustaining the objection.

In any event, defendant does not object to the propriety of the ruling as it relates to the question. Instead, he argues that the ruling indicates that the court was rejecting the defendant's right to present evidence on the value of the property. The record does not bear this out. Counsel was free to rephrase the question or present any other questions he thought relevant to the question of value. We find no error on this point.

Defendant also contends that the trial court erred in overruling his motion in limine and permitting the state to introduce evidence of the fire which destroyed Mr. Bell's house. In overruling the motion, the court stated that the burning of the house was a "direct part of a chain of events that resulted in the defendant's being arrested" and that therefore, it was admissible, although any insinuation as to defendant's involvement in the fire would not be permitted.

In light of the relevancy of the burning to an understanding of when the burglary occurred, the court's ruling appears both logical and reasonable. Moreover, because the record reveals no attempt by the state to imply that the defendant caused the fire, we cannot accept defendant's contention that the evidence was "manifestly prejudicial."

### 4. *Defects in the information and court procedure*

Defendant charges that the informations fail to specify the place where the crimes occurred and are, therefore, too defective to support a judgment. First, we note that the crime of stealing does not require an "inhabitable structure" and hence, identification of the locale of the crime as "Lafayette County" in the stealing information is adequate.

As to the burglary charge which requires proof of an "inhabitable structure", the information must set out the ownership and description of the premises in order to protect the defendant from double jeopardy for the same offense and to show that the structure was not that of the accused. *State v. Peck,* 545 S.W.2d 725, 727 (Mo.App.1977). The burglary information here identified the inhabitable structure as "located at Rural Route, Mayview, Missouri and owned by Kenneth F. Bell and Louise Bell." Defendant suggests that this description does not distinguish the structure from others that may be owned by the Bells in Mayview. We find this suggestion weak in light of the absence in the record of evidence of any such additional property. Moreover, as was done by this court in *State v. Kirkpatrick,* 595 S.W.2d 760 (Mo. App.1980), we look to the record and find that Mr. Bell further identified his property as "three-quarters of a mile from the town, west, on the rural road west of town" and as having "two driveways going in, alongside each other, on the east side of the house." Such a description adequately protects defendant from double jeopardy. Accordingly, we find that the information was not defective.

Defendant next asserts error in the trial court's refusal to hold a separate hear-

ing on the question of value of the tape recorder. The trial court denied defendant's pretrial motion to dismiss which stated that the sole item which defendant was charged with stealing was not worth $150, a necessary element of stealing as defined in § 570.030. The court ruled that the value of the tape recorder was a question for the jury.

Although defendant's objection to this ruling is not altogether clear, he appears to argue that the court should have heard evidence of value in a separate hearing because allowing the jury to decide the issue after hearing that the car was filled with other items prejudiced defendant. Because the court was correct in ruling that value was properly a question for the jury, *State v. Willis,* 328 S.W.2d 593 (Mo.1959), *cert. denied,* 362 U.S. 984, 80 S.Ct. 1073, 4 L.Ed.2d 1018 (1960), and because Instruction No. 6 expressly limited the jury's consideration to the value of the tape recorder, we find no error in the court's refusal to hold a separate hearing.

Finally, defendant complains of the court's failure to conduct a presentence investigation. Section 557.026 provides that a "probation officer shall, unless waived by the defendant, make a presentence investigation in all felony cases ..." and has been interpreted to make the investigation mandatory. Rule 29.07(a)(1), however, suggests that the investigation is discretionary by providing that the "probation officer shall, unless otherwise directed by the court, make a pre-sentence investigation ..." In attempting to reconcile these conflicting provisions, this court held in *State v. Phroper,* 619 S.W.2d 83, 91 (Mo.App.1981), that Rule 29.07(a)(1), adopted after § 557.026, supersedes the statute and "makes the use of presentence investigations and reports by the trial court in felony cases discretionary rather than mandatory." Therefore, because no abuse of discretion is either alleged or shown by defendant, we do not find the lack of a presentence investigation to be error.

For the foregoing reasons, the judgment of the trial court is affirmed.

All concur.